IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARTURO CASTRO, and all others | § | |
| similarly situated under | § | |
| 29 U.S.C. § 216(b), | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-0213-D |
| VS. | § | |
| | § | |
| PRECISION DEMOLITION LLC, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Following a jury trial and the entry of judgment in his favor for unpaid overtime pay and liquidated damages under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, plaintiff Arturo Castro ("Castro") moves for an award of $141,236.50 in attorney's fees, $1,272.30 in nontaxable expenses, and $10,568.82 in taxable costs. For the reasons that follow, the court grants the motion to the extent that it awards Castro attorney's fees in the sum of $41,333.70 and nontaxable expenses in the sum of $1,272.30. The court otherwise denies the motion.

I

Castro brought this suit under the FLSA against defendants Precision Demolition LLC and Precision Demolition, LP (collectively, "Precision Demolition"), Holfords Prairie Partners, LLC ("Holfords"), Raymond D. Rinker III ("Rinker"); and Aaron Smith ("Smith"), for unpaid overtime wages and retaliation. Following a six-day jury trial, the jury returned

a verdict partly in favor of Castro, and partly in favor of defendants.  Regarding Castro's FLSA overtime claim, the jury found that Castro had proved the essential elements of this claim against Precision Demolition, Rinker, and Smith; that Precision Demolition had willfully violated the FLSA; and that Precision Demolition owed Castro $608.85 for unpaid overtime for travel time.  Regarding Castro's FLSA retaliation claim, the jury found that Castro had proved all of the essential elements of this claim as to Precision Demolition and awarded him $13,300 in "Back pay."  The court entered judgment on the verdict, awarding Castro judgment against Precision Demolition in the principal sum of $13,908.85, together with liquidated damages in the sum of $608.85, and post-judgment interest.  The court assessed against Castro the taxable costs of court of Holfords, Rinker, and Smith.

The parties then filed motions for judgment as a matter of law and to alter or amend the judgment.  In *Castro v. Precision Demolition LLC*, 2017 WL 2954784 (N.D. Tex. July 11, 2017) (Fitzwater, J.) ("*Castro I*"), *appeal docketed*, No. 17-10895 (5th Cir. Aug. 14, 2017), the court held, *inter alia*, that there was insufficient evidence for a reasonable jury to have found that Precision Demolition retaliated against Castro, and it dismissed Castro's retaliation claim with prejudice.  *Id.* at *8.  The court then entered an amended judgment ordering that Castro recover against Precision Demolition, Holfords, Rinker, and Smith, jointly and severally, in the principal sum of $608.85, together with liquidated damages in the sum of $608.85, and post-judgment interest.  The judgment provided that each party would bear his or its own taxable costs of court.

Castro now moves for an award of $141,236.50 in attorney's fees, $1,272.30 in

nontaxable expenses, and $10,568.82 in taxable costs.  Defendants object to the motion on various grounds.

## II

As a threshold matter, the court addresses defendants' argument that Castro's counsel should not be awarded any fees in this case because they allowed this matter to go to trial knowing that Castro's overtime claim, as set forth in the complaint, was not supported by Castro's deposition testimony or the documents produced in discovery; they knew that none of the documents in the case supported the theory that Castro was terminated, but did not amend the complaint to allege that Castro was demoted *and/or* terminated; and the only claim they prevailed on at trial—Castro's claim for unpaid travel time—was based on a day-of-trial "epiphany" during which Castro recalled, for the first time, that he had been promised travel time.

The FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  Fee awards are mandatory for prevailing plaintiffs in FLSA cases.  *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) ("[A]n employer who violates the [FLSA] is . . . required to pay attorney's fees."); *see also Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 249 (5th Cir. 2016) ("Citing 29 U.S.C. § 216(b), [the Fifth Circuit] has held that '[r]easonable attorney's fees are mandatory' when a court finds that an employer has violated [29 U.S.C.] § 206." (citing *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1191 n.18 (5th Cir. 1979))); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d

795, 799 n.7 (5th Cir. 2006) (recognizing that "prevailing party" fee-shifting jurisprudence applies in FLSA cases even though the attorney's fee provision of the statute does not specifically mention "prevailing party").

A plaintiff must satisfy three requirements to demonstrate prevailing party status: (1) he must achieve judicially-sanctioned relief; (2) the relief must materially alter the legal relationship between the parties; and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered. *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013). To "prevail," the party seeking fees need not procure a favorable judgment on every claim. *Jenevein v. Willing*, 605 F.3d 268, 271 (5th Cir. 2010) (§ 1988 case). A plaintiff's success need not address the central claim of the case; prevailing-party status is appropriate where the plaintiff succeeds on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Petteway*, 738 F.3d at 137 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989)).

It is undisputed that Castro succeeded on his FLSA unpaid overtime claim and was awarded $608.85 for unpaid overtime for travel time and $608.85 in liquidated damages. The court thus concludes that Castro was the "prevailing party" in this lawsuit[1] and is entitled to an award of attorney's fees.

---

[1]Defendants do not dispute that Castro is a prevailing party. *See* Ds. Br. 16.

III

The court now turns to Castro's request for $141,236.50 in attorney's fees. As stated above, "[u]nder the FLSA, an employer who violates the statute is also required to pay attorney's fees." *Black*, 732 F.3d at 502 (citing 29 U.S.C. § 216(b)). The Fifth Circuit "use[s] the lodestar method to calculate an appropriate attorney's fee award under the FLSA." *Id*. (internal quotation marks omitted) (quoting *Saizan*, 448 F.3d at 799). "The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for [the] work." *Id*. (citation omitted). "The court should exclude all time that is excessive, duplicative, or inadequately documented." *Jimenez v. Wood Cnty., Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010). "[A]fter calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on 'the relative weights of the twelve factors set forth in *Johnson* [*v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)].'" *Black*, 732 F.3d at 502 (citations omitted).[2] The fee applicant bears the burden of substantiating both the

---

[2]The *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The Supreme Court has barred any use of the sixth factor. *Merrick v. Scott*, 2011 WL 1938188, at *1 n.3 (N.D. Tex. May 20, 2011) (Fitzwater, C.J.) (quoting *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 193 (5th Cir. 1999)). And the second factor generally cannot be used as a ground for enhancing the award. *Perdue v. Kenny A.*, 559 U.S. 542, 553 (2010).

requested hours and the hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

IV

To determine the lodestar, the court first considers whether the requested hourly rates are reasonable.

A

"The hourly rates to be used in the lodestar calculation are determined by 'the prevailing market rates in the relevant community .'" *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 6789456, at *15 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)), *aff'd*, 2007 WL 3085028 (5th Cir. Oct. 23, 2007). As the fee applicant, Castro "bears the burden of demonstrating 'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (quoting *Blum*, 465 U.S. at 895 n.11).

Castro seeks attorney's fees for the services of J.H. Zidell, Esquire ("Zidell") at an hourly rate of $350, increasing during the course of the litigation to $390; for the services of Robert Manteuffel, Esquire ("Manteuffel") at an hourly rate of $390; for the services of Joshua Petersen, Esquire ("Petersen") at an hourly rate of $230, increasing during the course of the litigation to $260; and for the services of Rosa Nichols ("Nichols"), a legal assistant, at an hourly rate of $90. Castro contends that the rates charged have been found reasonable in this district, citing various cases in which other judges of this court have found that an

hourly rate of $325 to $350 was reasonable for Zidell's services[3] and an hourly rate of $350 was reasonable for Manteuffel's services.

Defendants object to the rates Castro seeks for Manteuffel, Zidell, and Petersen.[4] They contend that the median hourly rate for Dallas area labor law practitioners is $280, that the median hourly rate for lawyers with over 25 years of experience (such as Manteuffel) is $350, that the median hourly rate for lawyers with 11 to 25 years of experience (such as Zidell) is $300, and that the median hourly rate for lawyers with 3-6 years of experience (such as Petersen) is $250; that Castro cites no authority showing Zidell's time to have ever been compensated at an hourly rate of $390; that the only case in which Manteuffel was awarded $390 was one in which the plaintiffs obtained a default judgment against pro se defendants; that Castro has made no showing regarding the customary rate in the community; that Petersen should not be compensated at an hourly rate of $260 per hour but should, instead, be compensated at the hourly rate of $230 since he has not demonstrated that he gained any substantial education or experience during the course of this litigation; and that Zidell should be compensated at an hourly rate of either $300 (which takes into account the median rate for practitioners of his tenure and the fact that Zidell has been admitted in Texas

---

[3]In a footnote, Castro contends that Zidell only requested $325 per hour in the cases in which he was awarded that amount, and that the $350 rate requested in this case is based on Zidell's qualifications to receive that rate in FLSA cases, including his extensive experience litigating FLSA cases (over 1,600 to date) and the fact that he has been a licensed attorney since 1994.

[4]Defendants do not object to Nichols' rate of $90 per hour.

only since 2010) or $350 (a rate previously upheld in this district).

B

"[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004). This court has previously found in an FLSA overtime case that an hourly rate of $350 was reasonable for the services of both Zidell and Manteuffel. *See Arriaga v. Califco, LLC*, 2013 WL 5928852, at *1 (N.D. Tex. Nov. 5, 2013) (Fitzwater, C.J.) ("Given the attorneys' respective levels of experience and the relevant prevailing rates, together with [plaintiff's] showing that courts have awarded fees using similar rates, the court, as an expert as to the reasonableness of attorney's fees, finds that [$350 per hour is] customarily charged in this locality for similar legal services and [is] reasonable."). Other judges of this court have also awarded Zidell and Manteuffel reasonable attorney's fees at an hourly rate of $350. *See, e.g., Pineda v. JTCH Apartments, LLC*, 126 F.Supp.3d 797, 803 (N.D. Tex. 2015) (Boyle, J.) (finding reasonable the following hourly rates: Zidell at $350.00/hour, Manteuffel at $350.00/hour, and Petersen at $230.00/hour); *Alonso v. Tepa Mar Y Tierra, Inc.*, 2014 WL 12577102, at *4 (N.D. Tex. July 8, 2014) (O'Connor, J.) (finding that $350.00 per hour for Zidell and $350.00 per hour for Manteuffel were reasonable rates). Although Castro requests fees for Manteuffel's services at an hourly rate of $390 and for part of Zidell's services at this same hourly rate, he does not provide the court any grounds for awarding fees at this higher rate as opposed to the $350 hourly rate that judges of this court have found to be reasonable in similar cases. Accordingly, based on the court's expertise in determining reasonable attorney's fees, it finds

- 8 -

that an hourly rate of $350 for the services of Manteuffel and Zidell is reasonable.

Castro requests attorney's fees for Petersen at a rate of $230 to $250 per hour. Petersen has been licensed in Texas since May 2013. Accordingly, at the commencement of this case, Petersen had been licensed for fewer than two years, and, at the time of trial (January 2017), he had been licensed for fewer than four years. According to the State Bar of Texas 2015 Hourly Fact Sheet, the median hourly rate in Dallas for an attorney with three to six years of experience is $250, and the median hourly rate for a Dallas attorney with two years of experience or less is $217. At least one judge of this court has awarded Petersen fees at an hourly rate of $230, *see Pineda*, 126 F.Supp.3d at 803, and defendants do not object to this hourly rate. Castro seeks fees at an hourly rate of $260 for some of Petersen's services, but he provides no justification for a fee award above the median for Petersen's level of experience or above the rate at which Petersen has previously been compensated by a judge of this court. Accordingly, based on the court's expertise in determining reasonable attorney's fees, it finds that $230 per hour is reasonable for an attorney with Petersen's level of experience.

V

The court now determines the number of hours that were reasonably expended by Castro's counsel.

A

Defendants present a general objection to Castro's request for fees for Zidell's services. They maintain that Castro cannot identify any document associated with this case

that Zidell drafted; that Castro cannot identify any point at which Zidell made any personal appearance; that there is nothing for which Zidell billed that either Petersen or Manteuffel could not have competently handled; that in this simple FLSA case, there was no need for a second senior lawyer to bill $18,000 for "review," "docketing," and "conference with associate," Ds. Br. 11; and that Zidell's fees should be excluded entirely.  Castro responds that Zidell billed only 46.6 hours in this case, which has been pending for over 30 months (which equates to approximately 1.5 hours per month during the pendency of this litigation), and argues that defendants cite no legal authority and present no evidence, other than their anecdotal observation, that it is improper for a senior attorney on a file to spend an average of 1.5 hours per month keeping up with a file and making strategic decisions.

As noted, the court should exclude all time that is duplicative.  *Jimenez*, 621 F.3d at 379-80.  "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized."  *Johnson*, 488 F.2d at 717.  This court has disallowed, for example, time expended by multiple attorneys who attended trial unnecessarily.  *See, e.g., Barrow*, 2005 WL 6789456, at *15 (disallowing as duplicative fees for two of four attorneys who represented plaintiff at trial where plaintiff failed to meet her burden of demonstrating why it was necessary for four attorneys to attend trial).  Although defendants object to Zidell's time entries on the ground that "there is nothing for which Mr. Zidell billed, that either Mr. Petersen, or Mr. Manteuffel could not have competently handled," Ds. Br. 11, they do not contend that any of Zidell's time entries are duplicative or unnecessary.  In fact, their argument suggests the opposite (i.e., the time entries reflect work

that *should* have been done, but by someone other than Zidell).[5]  Nor do they provide any authority for the proposition that a prevailing party is precluded from recovering fees for the services of a senior attorney who manages the case or assists with strategic decisions but neither drafts documents nor makes court appearances.  Accordingly, the court declines to disallow Zidell's time entries in their entirety.

B

Defendants maintain that Castro's attorneys have overbilled by, for example, spending an excessive amount of time drafting Castro's complaint, billing for time Manteuffel spent on tasks that could have been completed by Petersen or Nichols, and billing for time Manteuffel and Petersen spent on administrative tasks such as e-filing.  Castro responds that his attorneys' billing records indicate that Petersen, not Manteuffel, drafted the initial complaint; that because there are only three employees in Castro's attorneys' Dallas office, it is inevitable that Manteuffel would be required to engage in correspondence with outside parties; and that filing documents with the court is an essential function of an attorney.

In their annotated version of Castro's attorneys' billing ledger, defendants object to 1.5 hours that Manteuffel billed related to correspondence with the court regarding the trial transcript and correspondence with the company that supplied the translator at trial.  The

---

[5]To the extent defendants contend that "there is nothing for which Mr. Zidell billed, that . . . Mr. Manteuffel could not have competently handled," Ds. Br. 11, the court notes that Zidell and Manteuffel are being compensated at the same hourly rate in this case. Accordingly, even if Manteuffel had handled the matters for which Zidell billed, the overall cost for these services would have been the same.

court agrees that these tasks could have been handled by Nichols at a legal assistant's rate. The court therefore subtracts 1.5 hours from Manteuffel's total hours, and adds this time to Nichols' total.

The marketplace determines whether the 1.3 hours that Manteuffel spent preparing and filing documents (.5 hours on January 21, 2015, .8 hours on March 3, 2015) are included as a part of the attorney's overhead or ought to be compensated if billed separately. *Missouri v. Jenkins,* 491 U.S. 274, 288 (1989). The court holds that the prevailing market practice is to subsume such costs into the firm's overhead. Purely clerical work is not compensable at attorney rates, and is not even compensable at legal assistant rates. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (holding that clerical work performed by paralegal was not recoverable as attorney's fees). Accordingly, the court disallows these time entries totaling 1.3 hours.

Regarding the time that Petersen spent preparing and filing documents with the court, the court declines to disallow the time he spent preparing documents, but it disallows the time he spent filing documents due to its clerical nature. Defendants have identified a total of 6.4 hours that Petersen spent preparing and filing documents with the court. The court discounts this amount by 25% to account for the time Petersen spent on filing documents. Defendants have also identified a total of 18.9 hours that Petersen spent drafting and filing documents with the court. Because these time entries contain larger time increments, a smaller portion of which was likely spent on filing (as opposed to drafting), the court discounts this amount by 10% to account for the time Petersen spent filing documents.

Accordingly, the court disallows time entries totaling 3.5 hours.

The court has reviewed the remaining time entries in Castro's attorneys' billing ledger that defendants have identified as "overbilling," but declines to disallow any additional time entries as reflecting overbilling.

## C

Defendants next contend that Castro's attorneys' time entries utilize block billing. They object to Zidell's time entry from May 27, 2016 in which he spent 2.9 hours on "review of file for med[ia]tion next week and valuation to status conference with assoc[ia]te," and the .9 hours he spent the on May 30, 2016 on "conference with assoc[ia]te and risk analysis [for] mediation." Ds. App. Ex. C at 59. Defendants also maintain that Petersen "often block bills, including entries for drafting and/or preparation, and/or review, and/or efiling of various documents, while making no allocation of time to task, nor explaining the necessity of having the administrative portion of these tasks completed by an attorney billing between $230-260/hr. to prepare judge's copies of motions, and efile." Ds. Br. 10.

The term "block billing" refers to the disfavored "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011) (Fitzwater, C.J.) (citation omitted), *aff'd*, 420 Fed. Appx. 364 (5th Cir. 2011). Block billing is disfavored because it prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended. *Id.* at *5

- 13 -

"For example, a person engaging in block billing would record the total amount of time spent on a case that day, and then group several tasks under that single entry, leaving the court unable to determine how much time was devoted to a given task." *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 2013 WL 598390, at *4 (N.D. Tex. Feb. 15, 2013) (Fitzwater, C.J.) (citing *Fralick*, 2011 WL 487754, at *5), *rev'd on other grounds*, 747 F.3d 275 (5th Cir. 2014), *aff'd*, ___ U.S. ___, 135 S.Ct. 2507 (2015).

The court concludes that, although in a few instances Castro's attorneys have included more than one task in a single time entry, on the whole, they have provided day-by-day and task-by-task accounts of all time spent. *See, e.g., Shepherd v. Dall. Cnty., Tex.*, 2010 WL 2573346, at *1 n.1 (N.D. Tex. June 24, 2010) (Fitzwater, C.J.) ("Although the court has in other instances declined to award fees based on 'block billing,' it will not do so here because Shepherd's attorneys have provided day-by-day and task-by-task accounts of all time spent."). The detail they have provided is sufficient to permit the court to assess the reasonableness of the time expended. *Id.* Accordingly, the court declines to reduce Castro's requested fees based on the alleged use of block billing.

D

Defendants next ask the court to disallow time entries that are duplicative, relate to repetitive interoffice communications, or that are unsupported. They object to the .8 hours that Manteuffel spent on March 3, 2015 preparing and filing four summonses and the .4 hours that Petersen spent that same day on "receipt and review" of these same documents, and the .9 hours that Zidell spent on February 16, 2015 on "docket review to insure service

of process completed as to all defts and answer review, case plan, br[ie]f conferral with assoc[ia]te as to same." Ds. App. 40. They also object to Zidell's two "nearly identical block billing entries" on March 23, 2015 and to the .2 hours Petersen spent exchanging correspondence regarding the fact that defendant drafted its discovery requests in Word Perfect. Ds. Br. 11.

Regarding time entries related to the service of summons, the court has already disallowed the time Manteuffel spent preparing and filing the returns of summonses. *See supra* § V(B). Given that Manteuffel's time related to this task has been disallowed, the court declines to also disallow the time Petersen spent reviewing the returned summonses[6] or the time Zidell spent initially reviewing the docket to ensure that all defendants had been served. The court agrees that Zidell's time entries on March 23, 2015 appear to be at least somewhat duplicative, and, accordingly should be disallowed. *See* Ds. App. 42 (.8 hours for "conference with assoc[ia]te and to proposed dea[d]lines in case, *file review*" and .8 hours for "*file review* for scheduling order issues and deadlines." (emphasis added)). The court declines to disallow the .2 hours Petersen spent addressing correspondence that Castro maintains was *from defendants* related to the exchange of discovery requests in a certain

---

[6]Defendants would appear to agree with this approach. *See* Ds. Br. 10 ("Mr. Petersen's review of the returned summons is not per se unreasonable, but it is repetitive and duplicative in the context presented here, given that Mr. Manteuffel had just prepared and filed them.").

electronic format.[7]

E

1

In addition to their specific objections to Castro's attorneys' time entries, defendants contend that the court should use its "equitable discretion" to eliminate hours related to unsuccessful or dismissed claims.  Defendants maintain, *inter alia*, that Castro's attorneys made no good faith effort to exclude excessive, redundant, or otherwise unnecessary hours; that because Castro was unsuccessful on his claims for non-travel overtime, pain and suffering, emotional distress, and retaliation, it would be unjust to require that defendants fund these efforts; that the $1,217.70 the court awarded Castro in this case resulted from his date-of-trial claim regarding unpaid travel time, and defendants "should not be compelled to

---

[7]Although defendants highlight in their annotated version of Castro's attorneys' billing ledger various additional time entries that they believe are duplicative, relate to a repetitive and unnecessary interoffice communication, or are unclear, unsupported, or indecipherable, defendants do not explain why any of these entries should be disallowed.  If a party does not object to particular billing entries as inadequately documented, the court is not obliged *sua sponte* to sift through fee records searching for vague, duplicative, or repetitive entries.  *Cf. generally La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995) (holding that district court erred in failing to conduct full analysis of billing records "[a]s to the specific items of which [opposing party] complains").  It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention.  *See, e.g., Barrow*, 2005 WL 6789456, at *12 ("examining the individual entries to which [the opposing party] objects"); *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs., Inc.*, 2009 WL 361956, at *4 (N.D. Tex. Feb. 13, 2009) (O'Connor, J.) (analyzing "specific entries identified by [opposing party]"), *vacated on other grounds*, 612 F.3d 800 (5th Cir. 2010); *Rabo Agrifinance, Inc. v. Veigel Farm Partners*, 2008 WL 3992060, at *4 (N.D. Tex. Aug. 20, 2008) (Robinson, J.) ("Defendants refer to only 7 billing entries that they contend are 'vague.'  Of those entries referenced by the Defendants, the Court finds that the following billing entries are too vague[.]").

pay for trial-time epiphany," Ds. Br. 6; that Castro was ultimately awarded, at best, only 3.9% of the money he requested, and his attorneys did not properly adjust their fee request to allow for the limited degree of success in this case; and that because Castro's award was small "to the point of being de minim[i]s," *id.* at 7, defendants should not be compelled to pay any attorney's fee in this case.

In his reply, Castro argues that defendants have failed to point to any particular hours in his fee motion that were excessive, redundant, or otherwise unnecessary; that he acknowledged in his fee motion that he was unsuccessful on his retaliation claim following entry of the amended judgment, but that the retaliation and overtime claims were inextricably intertwined; and that "degree of success" is not a special circumstance justifying complete denial of fees in civil rights litigation.

2

The contention that Castro's fee request should be reduced because he succeeded on only a portion of one of his claims is properly addressed as part of the lodestar calculation. *Benton v. U.S. E.P.A.*, 2014 WL 5147983, at *4 (N.D. Tex. Oct. 14, 2014) (Fitzwater, C.J.). In *Hensley* the Supreme Court stated:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories.  In such a suit, even where the claims are brought against the same defendant[,] . . . counsel's work on one claim will be unrelated to his work on another claim.  Accordingly, . . . these unrelated claims [must] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

- 17 -

*Hensley*, 461 U.S. at 434-35; *see also City of Burlington v. Dague*, 505 U.S. 557, 565 (1992) ("[T]he statutory language limiting fees to prevailing . . . parties bars a prevailing plaintiff from recovering fees relating to claims on which he lost[.]").  By contrast, where a plaintiff's claims for relief

> involve a common core of facts or will be based on related legal theories [, m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435.

The court must therefore decide as a threshold matter whether Castro's claims for retaliation or for unpaid non-travel overtime are distinct from his successful overtime claim based on unpaid travel time and must therefore be excluded from the lodestar calculation. If the claim in question is not distinct—that is, it involves a common core of facts or is based on a related legal theory—"[this] court's focus should shift to the results obtained and adjust the lodestar accordingly," although it may be possible to identify specific hours that should be eliminated.  *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319,  327 n.13 (5th Cir. 1995) (citing *Hensley*, 461 U.S. at 436-37).  The "relatedness inquiry . . . turns on the facts and claims of the specific case."  *Williams v. Shinseki*, 2013 WL 1875055, at *4 (N.D. Tex. May 6, 2013) (Fitzwater, C.J.).

The court concludes that Castro's successful unpaid overtime claim based on unpaid

travel time is related to his unsuccessful claims for unpaid non-travel overtime and for

retaliation.  This court has previously noted several cases in which courts have concluded

that the retaliation and discrimination claims at issue were related.  *Id.* (citing *Trainor v. HEI*

*Hospitality, LLC*, 699 F.3d 19, 35-36 (1st Cir. 2012) ("The [district] court plausibly reasoned

that the successful retaliation claim and the unsuccessful age discrimination claim shared a

common legal theory" because the "plaintiff had to prove . . . that he reasonably and in good

faith believed that [defendant] was engaged in discrimination" in order to succeed on his

retaliation claim. (internal quotation marks omitted)); *Imwalle v. Reliance Med. Prods., Inc.*,

515 F.3d 531, 555 (6th Cir. 2008) ("This court has in fact held that discrimination and

retaliation claims are related for the purpose of awarding attorney fees." (citation omitted));

*Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 518 (9th Cir. 2000)

(holding that retaliation claims were "inextricably intertwined" with discrimination claims

for purposes of interconnectedness analysis)).  In *Williams* the court explained:

> The relatedness inquiry therefore turns on the facts and claims
> of the specific case.  As the Seventh Circuit stated in addressing
> prior precedent that found a claim of discrimination and a claim
> of retaliation for opposing that discrimination were distinct,
> there are undoubtedly cases where discrimination and retaliation
> claims are so discrete that a plaintiff who succeeds on only one
> claim would merit only a drastically reduced fee award.
> *Merriweather v. Family Dollar Stores*, 103 F.3d 576, 583-84
> (7th Cir. 1996) (discussing *Lenard v. Argento*, 808 F.2d 1242,
> 1246 (7th Cir. 1987)).  But a court does not err in finding that
> such claims are related for purposes of awarding attorney's fees
> where "the successful claim for retaliatory discharge could not
> have been tried effectively without reviewing and analyzing the
> facts that led to the underlying discrimination charge[.]"  *Id.*

- 19 -

*Id.* In his fee application, Castro maintains:

> Plaintiff's retaliation and overtime claims both sounded under the FLSA and were inextricably intertwined. The same witnesses provided testimony on both Plaintiff's retaliation and overtime claims and Plaintiff's retaliation claim grew directly out of his request to be paid overtime in accordance with the law. The same written discovery requests and depositions would have been necessary even if Plaintiff had only brought a claim for overtime damages.

P. Br. 8. The court agrees and concludes that the two claims are related. Accordingly, the court does not disallow any specific time entries related to Castro's unsuccessful claims. It instead focuses, below, *see infra* § V(G), on the significance of the overall relief Castro obtained in relation to the hours reasonably expended on the litigation.

F

Defendants contend that the court should reduce the lodestar amount in consideration of the *Johnson* factors[8] for six reasons: first, this case required no time and labor beyond any "normal" civil case and less than most FLSA cases that are tried on behalf of multiple plaintiffs; second, no novel or difficult questions were at issue in the case; third, no special skill was required to perform the legal services properly; fourth, Castro's counsel worked on a contingent fee basis, which explains the lack of billing judgment shown in their billing ledger; fifth, in a similar case, the court cut plaintiff's counsel's fee request approximately 57%; and, sixth, Castro achieved only a small degree of success in this case.

---

[8]Castro also addresses the *Johnson* factors in his brief but does not contend that the lodestar amount should be adjusted upward or downward in consideration of these factors.

- 20 -

The court finds no merit for a downward departure in the first five reasons defendants advance.  The lodestar "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," and "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation."  *Perdue v. Kenny A.*, 559 U.S. 542, 553 (2010) (citation omitted).  The minimal time and labor, as well as the difficulty of the issues at play, the level of skill required to perform the legal services properly, and awards made in similar cases are accounted for in the lodestar; reducing the award in light of these factors would be double counting.  *See, e.g., Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 771-72 (5th Cir. 1996) (indicating that time and labor is generally subsumed within lodestar); *Mick Haig Prods., E.K. v. Does 1-670*, 2012 WL 213701, at *2 (N.D. Tex. Jan. 24, 2012) (Godbey, J.) ("the lodestar calculation already includes the time and labor required to litigate the case, the novelty or difficulty of the question involved, the skill required to litigate the case, the customary fee for similar work in the community, the experience, reputation, and ability of the attorneys, and awards made in similar cases."); *In re Kirby Inland Marine, L.P.*, 2008 WL 4642616, at *9 (M.D. La. Oct.16, 2008) (finding that lodestar took into account "time and labor required, skill and experience/reputation of the attorneys, the difficulty of the issues . . . , and preclusion of other employment").  As for defendants' argument regarding contingent fees, "[t]he Supreme Court has 'barred any use' of the sixth *Johnson* factor, 'whether the fee is fixed or contingent.'"  *Wesley v. Yellow Transp., Inc.*, 2010 WL 4629972, at *5 (N.D. Tex. Nov. 8, 2010) (Fitzwater, C.J.) (quoting *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 193 (5th Cir. 1999)).  And although defendants' argument

concerning the contingent nature of Castro's counsels' fee may be seen as somewhat of a variation of the sixth factor—they contend that the contingent nature of the fee explains counsels' lack of billing judgment—even that concept is subsumed within the lodestar.

G

What remains is "the most critical factor in determining an attorney's fee award": the degree of success obtained. *Saizan*, 448 F.3d at 799 (quoting *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003)). There is no precise formula for courts to use when reducing the lodestar amount to reflect a plaintiff's limited success. *See Wright v. Blythe-Nelson*, 2004 WL 2870082, at *8 (N.D. Tex. Dec. 13, 2004) (Fitzwater, J.) (citing *Hensley*, 461 U.S. at 436). "[A] mathematical approach comparing the total number of issues in the case with those actually prevailed upon" is inappropriate because "[s]uch a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors," and because it is not "necessarily significant that a prevailing plaintiff did not receive all the relief requested." *Hensley*, 461 U.S. at 435 n.11. When a plaintiff obtains "excellent results, his attorney[s] should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation[.]" *Id.* But when a plaintiff "achieve[s] only partial or limited success," granting full compensation may be excessive, and the court may reduce the attorney's fees award to account for the limited success. *Id.* at 436.

Defendants maintain that the lodestar amount should be reduced because Castro

sought damages in an amount between \$31,260 and \$530,600[9]; he was ultimately awarded, at best, only 3.9% of the money he requested in the jury instruction on travel time that he received (over objection) at trial; and Castro failed on his claims of non-travel overtime, pain and suffering, emotional distress, and retaliation.  Castro replies that he is the prevailing party on his overtime claim as to each defendant, and that the appeal of his retaliation claim remains outstanding; that defendants have "grossly overstat[ed] the damages [he] sought . . . in an admittedly 'speculative' calculation," P. Reply 2; and that, although the amount recovered is less than the fees claimed, this is not unusual in FLSA cases, and courts have awarded considerable amounts for attorney's fees—even when the plaintiff's recovery is modest—to protect employees with moderate incomes and to promote the purpose of the FLSA.

Defendants correctly observe that fees should not overwhelm a case.  In FLSA cases, as noted, the amount of damages is often less than the fees awarded.  Indeed, in recent years this court has seen a spate of FLSA cases brought by low-wage workers seeking paltry sums. The proper measure is not proportionality.  But the case law recognizes that the most critical factor in determining the reasonableness of a fee award is the degree of success obtained. The case law provides guidance on reductions to the lodestar to reflect the degree of success.

In *Saizan* the Fifth Circuit affirmed the district court's reduction of the lodestar in an FLSA case following a partial jury verdict and settlement on the remaining claims "in

---

[9]Defendants concede that this upper amount, calculated based on Castro's request for front pay "is speculative."  Ds. Br. 1-2 n.5.

proportion to the difference between the initial prayer and the ultimate settlement amount," from $102,651.30 to $13,000. *Saizan*, 448 F.3d at 801. In *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 151-52 (2d Cir. 2008), the court upheld a 50% reduction to the $99,778.75 lodestar based on the plaintiff's recovering only $1,774.50 on her FLSA claim, a fraction of the relief initially sought, because she failed to obtain collective action certification. In *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 558 (7th Cir. 1999), the Seventh Circuit upheld an attorney's fee award that reduced the lodestar by 50% because the plaintiff obtained a judgment that included $1,100 of unpaid overtime, but did not include the other relief that made up the $25,000 prayer. In *International Brotherhood of Carpenters & Joiners of America, AFL-CIO, Local Union No. 217 v. G.E. Chen Construction, Inc.*, 136 Fed. Appx. 36, 39 (9th Cir. 2005), the court upheld a 67% reduction to the lodestar. The plaintiffs initially sought $6.7 million but recovered only $7,897 on their FLSA claim; the court awarded $208,173.08 in attorney's fees for the FLSA claim. In *Powell v. Carey International, Inc.*, 547 F.Supp.2d 1281, 1296-97 (S.D. Fla. 2008), the court reduced the lodestar by 67% because the plaintiffs recovered a total of $294,140 after initially seeking more than $15 million in damages under the FLSA. In *Wales v. Jack M. Berry, Inc.*, 192 F.Supp.2d 1313, 1326-28 (M.D. Fla. 2001), another FLSA case, the court reduced the lodestar by 67% because the plaintiffs recovered less than 15% of the damages originally claimed. In *Hoffman v. S. Garber, Inc.*, 1993 WL 189623, at *4 (N.D. Ill. June 2, 1993), the court reduced the lodestar by 41% to reflect the difference between the amount sought under the FLSA and the result obtained.

Using the guidance provided by those cases, the court concludes that a substantial reduction to the fee amount Castro seeks is appropriate. Although Castro was successful on his FLSA overtime claim, he only recovered overtime damages for travel time, a theory of recovery that he did not even plead in his complaint, and he was ultimately unsuccessful on his retaliation claim. Although the trial took place over a six-day period, it could have been completed in fewer days.

Accordingly, the court reduces the lodestar amount by 67%. This reduction gives Castro a fair, reasonable, and equitable fee, consistent with the purposes behind the FLSA and other, similar fee-shifting statutes, as well as the degree of Castro's success.

VI

The court turns now to Castro's request for $1,272.30 in nontaxable expenses.

A

Defendants object to Castro's request for reimbursement for postage, contending that communication between counsel is faster, easier, and occurred very often via telephone and email and that Castro has failed to show the reasonableness of incurring such substantial postal expenses; to Castro's request for reimbursement for conference calls, contending that Castro has made no showing of the reasonableness of incurring costs for conference calls when these are available at no cost through various telecommunications providers; and to Castro's request for reimbursement for the use of FedEx, contending that Castro has made no showing of the reasonableness or necessity for incurring such large costs when there exist

many other options to timely and more economically send documents to the court.[10]

Castro replies that service by mail is specifically authorized by the Federal Rules of Civil Procedure and that defendants cite no authority for the proposition that service by mail is unreasonable; that the costs related to a conference call are related to a telephonic pretrial conference with the court, and although some telecommunications companies provide free conference call options, "the pretrial conference with the Court does not seem to be the time to test a free option and Plaintiff is not aware of the Court authorizing a pretrial conference via Skype," P. Reply 10; and the FedEx charges are related to the delivery of judge's copies of pretrial materials to the court, which the court requires to be delivered to chambers no later than the date a filing is due and when available, FedEx is cheaper than same-day delivery charges for delivery by courier.

B

In addition to the taxable costs listed under 28 U.S.C. § 1920, "Texas District Courts have also determined that [additional] costs are . . . appropriately awarded to prevailing parties in FLSA cases as part of a reasonable fee." *Dobson v. Timeless Rests., Inc.*, 2017 WL 1330164, at *7 (N.D. Tex. April 11, 2017) (Lindsay, J.) (quoting *Alex v. KHG of San Antonio, LLC*, 125 F.Supp.3d 619, 629-30 (W.D. Tex. 2015)). In *Dobson* the court found that the plaintiffs were entitled to recover for various non-taxable costs, including the costs

---

[10]Defendants do not object to Castro's request for costs claimed for postage to Judge Fitzwater, for certified mail to attorney K. Ensley, for Gilbert Mediations, or for trial and/or mediation-related costs of parking and mileage.

for travel, meals, parking, lodging, and postage.  *Id.* (citing *Rouse v. Target Corp.*, 181 F.Supp.3d 379, 392 (S.D. Tex. 2016) ("costs for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, document scanning, and visual equipment litigation expenses are also recoverable under the FLSA as part of an attorney's fee award." (citations omitted)).  The court finds that the costs Castro requests are all reasonable and compensable and should be awarded. Although the court does not disagree that Castro's attorneys might have incurred fewer expenses had they opted to use electronic or telephonic communication methods instead of the postal service, defendants have not cited any authority that supports the assertion that Castro's attorney's use of the postal service was unreasonable.  Nor can the court conclude that Castro's other requested expenses are either unreasonable or not reimbursable. Accordingly, the court grants Castro's request for $1,272.30 in nontaxable expenses.

VII

Castro seeks $10,568.82 in taxable costs.  He acknowledges that his request "will be denied pursuant to the Court's Amended Judgment," P. Br. 14, but maintains that he is claiming these costs in order to preserve his right to request them pursuant to the outcome of any appeal of this matter.  In *Castro I* the court concluded in its discretion that each party should bear his or its own taxable costs of court.  *Castro I*, 2017 WL 2954784, at *9. Accordingly, Castro's request for $10,568.82 in taxable costs is denied.

VIII

In sum, the court finds that the reasonable hourly rate for Zidell and Manteuffel is $350, the reasonable hourly rate for Petersen is $230, and the reasonable hourly rate for Nichols is $90. The court subtracts from Zidell's requested 46.6 hours a total of 1.6 hours for a duplicative billing entry, and from Manteuffel's requested 178.5 hours a total of 2.8 hours. The court adds to Nichols' requested 96.25 hours a total of 1.5 hours for tasks Manteuffel handled that could have been handled by Nichols. The court disallows from Petersen's requested 174 hours a total of 3.5 hours for time spent filing documents.

After taking the foregoing deductions, the court then further reduces the hours of each by 67%, resulting in 14.85 hours for Zidell (45 - 30.15 = 14.85); 57.98 hours for Manteuffel (175.7 - 117.72 = 57.98); 56.26 hours for Petersen (170.5 - 114.24 = 56.26); and 32.26 hours for Nichols (97.75 - 65.49 = 32.26). The court multiplies these hours by the reasonable hourly relates, resulting in a lodestar of $5,197.50 for Zidell, ($350 per hour x 14.85 hours); $20,293.00 for Manteuffel ($350 per hour x 57.98 hours); $12,939.80 for Petersen ($230 per hour x 56.26 hours); and $2,903.40 for Nichols ($90 per hour x 32.26 hours). The court thus awards a total attorney's fee of $41,333.70.

*   *   *

For the reasons explained, the court grants in part and denies in part Castro's motion for attorney's fees and expenses, awarding him the sum of $41,333.70 in attorney's fees and the sum of $1,272.30 in nontaxable expenses.   The court denies Castro's request for $10,568.82 in taxable costs.

**SO ORDERED**.

December 14, 2017.


_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 29 -